## DAVIS v. STATE.

Opinion delivered February 20, 1897.

RAPE—INSTRUCTION.—Where the court has instructed the jury that force is a necessary element in the crime of rape, and that the proof must show beyond a reasonable doubt that the woman did not consent, and that her resistance was not a mere pretense, but was in good faith, and that, if by acts of violence she was so much in fear of her life or bodily harm that she was unable to resist, that would be equivalent to force, it was not error to refuse to further instruct the jury to the effect that there must have been "the uttermost resistance" on the part of the prosecutrix.

EVIDENCE—HEARSAY.—Testimony of the officer arresting defendant charged with rape that the prosecutrix described the ravisher to him, and that upon that description he identified and arrested defendant, is inadmissible.

Appeal from Pulaski Circuit Court, First Division.

ROBERT J. LEA, Judge.

*Ashley Cockrill* for appellant.

The court erred in admitting the testimony of the constable, Beller, that the rapist was described to him by the prosecutrix, and that he identified him by that description, and arrested him. *Lewis* v. *State*, 61 Ark. 494. Also in allowing him to testify as to what prosecutrix said and did when he arrested defendant and took him in her presence. 34 S. W. Rep. 274; 28 *id.* 810. It was error to refuse to instruct the jury that if prosecutrix yielded at any time during the assault, or was passive, or ceased to resist, and her mind was not so overpowered with fear, they should find for defendant. 36 Mich. 203; 110 Mass. 405; 53 Mo. 65; 43 Cal. 447; 35 Ind. 506; 82 Va. 653; 17 Sup. Ct. Rep. 210. The prosecutrix must resist to the extent of her ability. 59 N. Y. 374; 126 *id.* 283; 1 Parker, Cr. Rep. 625; 19 Neb. 330; 32 N. Y. 525, 531, 540; 3 Hill, 309, 316, 317; 7 Carr. &

P. 318; 13 Mich. 427, 433; 53 Mo. 65; 19 Wend. 134–5; 47 Wis. 523; 11 Neb. 276; 58 N. W. Rep. 22; 6 Cal. 221; 27 Fla. 387; 42 Pac. Rep. 953.

*E. B. Kinsworthy*, Attorney General, for appellee.

BUNN, C. J.   This is an indictment for rape, tried and determined in the Pulaski circuit court, first division, and resulting in a verdict and judgment of guilty, from which, in due form, defendant appeals to this court.

The principal, and the only material, controversy in this case is:   First, as to the court's instruction on the subject of the character and continuity of resistance exhibited by the injured party, necessary to show that the rape was really and in fact against her will, as defined and required by the statute; and, secondly, whether or not the trial court improperly admitted the testimony of the officer who made the arrest, in so far as he referred in his testimony to the description the injured party gave him of the person who committed the offense, before the arrest was made, and the identity of the defendant with the crime established in that way.

Defendant complains that the court should have given the second instruction asked by him, which is as follows, to wit: "You are instructed, as a mattter of law, that force is an essential element in the crime of rape.   There must be proof of actual penetration made against her will.   There must be on her part the uttermost resistance.   Opposition by mere words is not enough.   She must resist up to the point of being overpowered by actual force, or her will must be so overcome by fear and terror so extreme as to preclude resistance. If you under all the evidence have a reasonable doubt that such resistance was exercised, you will find the defendant not guilty of rape.   In considering the amount of resistance, you are to take into consideration all the surrounding circumstances, such as the relative

Instruction as to rape properly refused.

strength of the parties, their relative ages, the outcry or want of outcry, the physical power still possessed by the prosecutrix after the alleged resistance; and if, after considering all the evidence, you have a reasonable doubt of defendant's ability to have committed the crime, if the prosecutrix, by the use of all her powers of resistance, could have prevented the connection at any time before it was actually made, you will find the defendant not guilty of rape."

The court gave on its own motion the following instruction, numbered 4, to wit: "Force is a necessary element in the crime of rape. The carnal knowledge must be had by him against the will of the person alleged to have been raped. The proof must show, beyond a reasonable doubt, that the woman did not consent, and that her resistance was not a mere pretense, but was in good faith. As before stated to you, it must be against the will of the party; that is, by force. If the carnal knowledge was had actually by force, or if the woman submitted from terror or dread of greater violence, the intimidation becomes equivalent to force. The word 'force' is taken in its ordinary acceptation. I mean by it common physical force. If by acts of violence the woman is so much in fear of her life or bodily harm that she is unable to make resistance, that is equivalent to force." This instruction, we think, fairly submitted the question of force and resistance to the jury. We are aware that some authorities are to the effect that superlative words, like "uttermost resistance," "resistance to the last extreme," and such like, should be employed. But we think the instruction, as given by the court in this instance fully covers the point, and that the court committed no error in refusing the instruction asked by defendant. We think the court's instructions on the whole were very fair to the defendant.

The objection to the testimony of the constable, <span style="float:right;">Evidence held to be hearsay.</span> Beller, we think was well made. Witness stated: "I am a white man, and constable of Hill township. I heard about the rape Saturday, but did not go to see Mrs. Reynolds until Sunday morning. When I arrested the defendant, I took him out to Mrs. Reynolds' house. I didn't arrest him until Sunday afternoon. Mrs. Reynolds described the person who had raped her to me. The minute I heard the description, I knew exactly who the scoundrel was. I didn't go to his house to arrest him. I didn't go there Saturday night, because I had a reason for not going there at night. I didn't go to his house to arrest him Sunday morning because I had to go to see Mrs. Reynolds. I didn't stay at Mrs. Reynolds' more than fifteen or twenty minutes. Ques. Did Mrs. Reynolds describe the person who raped her to you? Ans. Yes, sir. Q. Does the defendant here tally with that description? A. Yes, sir. (The defendant objected to the above question, the court sustained his objection, and the prosecuting attorney puts the question in the following form). Q. Did Mrs. Reynolds describe the person who had raped her to you? A. Yes, sir. Q. Did you, according to that description, arrest this boy (pointing to the defendant)? A. Yes, sir. (The defendant objected to the above question and answer, the court sustained his objection, and the prosecuting attorney then put the question in the following form). Q. Did Mrs. Reynolds describe the boy who had raped her to you? A. Yes, sir. Q. Did you arrest this boy? A. Yes, sir. (The defendant at the time objected to the above question and answer, the objection was overruled by the court, and the defendant, at the time, saved his exception to the court's action in allowing the witness to testify to the above. The exceptions were noted by the court). As soon as I brought the defendant to Mrs. Reynolds, she recognized him, and sprang from

474 DAVIS v. STATE. [63

her bed, and says : ' That is the dirty scoundrel. Let me get at him.' She jumped up in bed, and I pulled the boy away from her."

It is frequently the case, if not in most cases, that an officer, in the performance of his duty to apprehend criminals, is compelled to procure all available information as to description and identity both from injured parties and others. Otherwise, it would be impossible to determine whom to arrest. The objection, therefore, is not that the woman in this case described the party who had raped her to him. The objectionable thing is his detailing, as a witness at the trial, the fact that the injured party had given him the description of the ravisher, and that upon that description he identified and and arrested him. Such testimony is simply strengthening and bolstering up the testimony of the injured party. The rule on this subject is that the officer making the arrest, as in this case, should testify on the stand no further as to his reason for seeking and arresting the criminal than that there was an outcry or information furnished him in other ways of the commission of the crime, and that thereupon he proceeded to search for and apprehend the criminal. Whatever information he may obtain as to the description and identity of the alleged criminal is for his use in making the arrest, but not for his use as a witness; for it is but hearsay after all.

In the late case of *Lewis* v. *State*, 61 Ark. 494, we held that such testimony as to the identity of stolen property is not admissible. The same rule applies in a case like this, especially where the defendant is nearly always liable to be convicted on the testimony of one person. The ravisher being entirely unknown to the injured party, and the defendant having testimony tending to prove an alibi, the question of identity became one of nicety, and it was prejudicial to cast the weight

of the improper testimony in the prosecution's end of the scales.

If the last of the objectionable questions and answers had been the first and only ones propounded to and made by the witnesses on the subject, there probably would have been no legal objection to them; but, being connected with the preceding objectionable questions and answers, as they were, it is impossible to say, that the state did not succeed in presenting to the jury the very fact that the court was endeavoring to keep from them.

For this error, the judgment is reversed, and the cause remanded for a new trial.